WILSON, Circuit Judge,
dissenting:
I dissent from the majority’s dismissal of Appellants’ claims related to the EPA’s forthcoming Phase II rule. Although Appellants have demonstrated that they have been injured by the consent decree, the majority’s opinion effectively eliminates all means by which Appellants could challenge any errors made by the district court when approving it. Because: (1) nothing in standing doctrine requires Appellants to rely solely on one particular avenue for suit where multiple, justiciable avenues exist, see Ala. Power Co. v. U.S. Dept. of Energy, 307 F.3d 1300, 1309 (11th Cir.2002) (rejecting the Department of Energy’s argument that non-parties to a settlement agreement should await a final decision by the Department before suing, rather than challenging the terms of the settlement agreement); (2) “fairly traceable” does not mean absolutely and exclusively traceable, see Bennett v. Spear, 520 U.S. 154, 168-69, 117 S.Ct. 1154, 137 L.Ed.2d 281 (1997) (holding, based on analogous facts, that “fairly traceable” does not mean that the defendant’s actions must be the very last step in the chain of causation); and (3) our law is clear that a court must not enter a consent decree without the consent of all parties whose rights would be affected, see United States v. City of Hialeah, 140 F.3d 968, 978-81 (11th Cir.1998), this Court should have reached the merits of Appellants’ claims alleging substantive and procedural injuries from the entry of the consent decree.
First, the majority finds that Appellants lack standing because their harms are fairly traceable not to the consent decree, but to the EPA’s 2009 Determination, which triggered a non-discretionary duty for the EPA to promulgate new numeric water-quality criteria. See Majority Op. at 1306. The majority then suggests that Appellants’ proper avenue for suit is to challenge the 2009 Determination directly, because the consent decree “did nothing to change the effect of the 2009 Determination.” Majority Op. at 1306. This reasoning is flawed. Although Appellants have challenged the 2009 Determination in a separate, pending case, they are now bound by the terms of the consent decree. Indeed, the district judge presiding over the suit challenging the 2009 Determination has stayed all proceedings pending resolution of Appellants’ claims surrounding the consent decree. See Fla. Water Envtl. Ass’n Util. Council v. Jackson, No. 4:09-CV-428-RHWCS, No. 15 (N.D. Fla. entered Sep. 29, 2010) (staying all proceedings pending this Court’s decision and noting that “[tjhis order does not change the parties’ obligation to comply with the consent decree”). Because Appellants cannot meaningfully challenge the 2009 Determination so long as the consent decree stands, Appellants’ injuries are legally traceable from the consent decree.
*1308 Appellants have spent significant resources to ensure that their wastewater systems would satisfy the pre-existing standards mandated by the 1999 consent decree. Understandably, Appellants sought to challenge the 2009 consent decree’s conflicting requirements. To this end, the Utility Council provided an expert’s affidavit with its motion opposing the consent decree stating that “statewide numeric nutrient criteria will conflict with th[e] ongoing scientifically valid process in which the State and local jurisdictional governments have invested heavily.” Thus, there is no question that Appellants alleged a concrete and imminent injury in fact. See Bennett, 520 U.S. at 168, 117 S.Ct. 1154 (“Given petitioners’ allegation that the amount of available water will be reduced and that they will be adversely affected thereby, it is easy to presume specific facts under which petitioners will be injured.... [Thus, t]he complaint alleges the requisite injury in fact.”).
Appellants’ alleged substantive injury— the forthcoming EPA rule mandating numeric nutrient limits — is fairly traceable from the requirements imposed by the consent decree. See id. at 168-69, 117 S.Ct. 1154 (stating that “injury produced by determinative or coercive effect” satisfies the requirements for standing, and explaining that the government’s argument “wrongly equate[d] injury ‘fairly traceable’ to the defendant with injury as to which the defendant’s actions are the very last step in the chain of causation”). The law does not preclude Appellants from challenging the consent decree simply because they could alternatively challenge the 2009 Determination or the results of the EPA’s future rulemaking. Cf. Ala. Power Co., 307 F.3d at 1309 (explaining that utility companies seeking to establish standing should not have to wait to challenge a final decision of the Department of Energy where the companies would “[i]n either circumstance ... be forced to pay for the damages ... ”). If the validity of the 2009 Determination depends on resolution of the consent decree, but a challenge to the consent decree is not justiciable because Appellants should instead challenge the 2009 Determination, Appellants have alleged a legally cognizable injury for which there is literally no legal remedy.
The majority further reasons that Appellants cannot prove an imminent, concrete procedural injury for standing purposes because any such injury would only be justiciable following the EPA’s promulgation of the final rule. Majority Op. at 1306. In so stating, the majority assumes incorrectly that the law prohibits Appellants from challenging the consent decree’s influence on the forthcoming rulemaking. See Bennett, 520 U.S. at 169, 117 S.Ct. 1154 (finding that petitioners’ injury was traceable to an advisory opinion, because while that opinion “theoretically serves an ‘advisory function,’ in reality it has a powerful coercive effect on the agency action ” (citation omitted) (emphasis added)); Ala. Power Co., 307 F.3d at 1309 (finding that the utility companies need not “await a final decision by the Department”); United States v. S. Fla. Water Mgmt. Dist., 922 F.2d 704, 708-10 (11th Cir.1991) (finding that plaintiffs had “shown a potential impairment of their rights sufficient to establish intervention,” because, although other “avenues of relief would remain open” to plaintiffs through subsequent litigation, the district court’s order would likely injure plaintiffs by influencing a subsequent court’s decision).
Finally, the majority concludes that Appellants suffered no redressible injury, because “the unchallenged 2009 Determination and the water-quality standards promulgated under it would stand.” Majority Op. at 1306. This is incorrect; a favorable decision by this Court would re *1309 dress Appellants’ injuries by allowing both the EPA and the district court in the separate, pending proceeding to fairly evaluate Appellants’ evidence about whether new numeric standards are warranted. Because the district court in this case denied Appellants’ motion for an evidentiary hearing, Appellants never had such an opportunity. This is troublesome because Appellants have demonstrated that the district court erred with regard to essential facts when approving the consent decree — for instance, the district court stated that Florida had failed to adopt any numeric nutrient requirements. On the contrary, the state had already promulgated seventy-nine TMDLs, see Fla. Admin. Code Ann. r. 62-304 (2004), and Appellants had brought this fact to the court’s attention both in a motion hearing and in filed memoranda.
Under the majority’s view of traceability and redressibility, no one could ever have standing to challenge a consent decree that is entered prior to a final agency rulemaking on the same matter. Cf. Ala. Power Co., 307 F.3d at 1309 (rejecting a similarly circular argument that the Secretary of the Department of Energy’s duty to report to Congress precludes a finding of “injury” because Congress might alter the Department’s determinations through legislation). Our law does not contemplate such a result. This Court has made clear that those who are directly affected by a judicially approved consent decree should have an opportunity to challenge it. See City of Hialeah, 140 F.3d at 978-81, 984. Here, the district court’s entry of the consent decree caused Appellants a concrete and imminent injury in fact, and that injury could have been redressed by allowing Appellants some means by which they could challenge the factual basis for the consent decree. The effect of dismissing Appellants’ appeal on standing grounds is that Appellants will be subject to the consent decree’s influence on the forthcoming rule-making and will be bound by any errors of the district court in approving it, but will be stripped of meaningful opportunity to challenge the substantive or procedural reasonableness of the consent decree in court.